UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACKWISE, INC.,

                              Plaintiff,

       -v-

FOLEY SHECHTER ABLOVATSKIY, LLP, JONATHAN
R. SHECHTER, and ALEXANDER ABLOVATSKIY,

                              Defendants.

CIVIL ACTION NO.: 19 Civ. 11094 (AT) (SLC)

**DISCOVERY ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.   <u>INTRODUCTION</u>

Before the Court is the motion of Plaintiff Rackwise Inc. ("Rackwise") to compel the production of communications and documents withheld by Defendants Foley Shechter Ablovatskiy, LLP, Jonathan R. Shechter, and Alexander Ablovatskiy (together "Defendants") on the grounds of attorney-client privilege, common interest privilege, and work product doctrine (the "Motion") (ECF No. 55), and Defendants' cross-motion to compel Rackwise's communications with its corporate counsel (the "Cross-Motion") (ECF No. 57).  For the reasons set forth below, the Motion is GRANTED, and the Cross-Motion is DENIED.

## II.   <u>BACKGROUND</u>

### A.  <u>Factual Background</u>

The following facts are taken from Rackwise's Complaint (ECF No. 7) and are presumed true for purposes of the Motion and the Cross-Motion.

1. **Rackwise and the 2017 change in management**

Rackwise is a publicly-traded Nevada corporation involved in software development, sales, and marketing.  (ECF No. 7 ¶ 9).  On September 30, 2011, Guy Archbold was elected President, Chief Executive Officer ("CEO") and Chairman of the Board of Rackwise.  (Id. ¶ 10).

On May 7, 2014, Rackwise Funding II, LLC ("RFII") entered into a subscription agreement (the "Subscription Agreement") with Rackwise under which RFII and Black Diamond Financial Group, LLC ("BDFG") acquired the right to appoint two members to Rackwise's Board of Directors (the "Board").  (ECF No. 7 ¶ 11).  As of February 2, 2017, the Board consisted of Archbold, John Kyees, and Michael Feinberg (a fourth member, Sherman Henderson, stepped down in 2016).  (Id. ¶ 14 & 14 n.1).

On February 2, 2017, after meeting all necessary prerequisites, RFII and BDFG exercised their right under the Subscription Agreement and nominated two new members to the Board, Patrick Imeson and Bart Richter (together with Archbold, Kyees and Feinberg, the "2017 Board").  (ECF No. 7 ¶ 15).  That same day, Rackwise convened a special meeting of the 2017 Board, which Kyees, Feinberg, Imeson and Richert attended (the "Special Meeting").  (Id. ¶ 17).  At the Special Meeting, the Board discussed "serious concerns regarding Archbold's behavior," including alleged embezzlement of company asserts and interference with client relationships.  (Id. ¶ 18).  At the Special Meeting, the 2017 Board voted to remove Archbold from his positions at Rackwise.  (Id. ¶ 19).

On February 3, 2017, Kyees and Feinberg ratified the appointments of Imeson and Richert as directors, officially removed Henderson, and notified Archbold of his termination.  (Kyees, Feinberg, Imeson and Richert, together, the "New Rackwise Board").  (ECF No. 7 ¶¶ 16, 20).  On

March 23, 2017, Rackwise shareholders ratified Archbold's termination and the appointments of Imeson and Richert to the New Rackwise Board.  (Id. ¶¶ 26–27).  On February 15, 2017, Rackwise reported these changes in management to the United States Securities & Exchange Commission ("SEC") on a Form 8-K filing.  (Id. ¶ 22).

Rackwise alleges that, after Archbold was removed from his positions at Rackwise, he, "through the advice, recommendation and assistance of the Defendants, repeatedly sought to interfere with and disrupt Rackwise's business operations," primarily through repeated public assertions "that [he] was still in charge of and continued to be Rackwise's President, CEO and Chairman[.]"  (ECF No. 7 ¶ 28).

### 2.   Archbold's actions after termination

Rackwise asserts that Archbold, acting illegally and without actual authority, "at the advice and recommendation" of the Defendants, filed a separate Form 8-K disputing his discharge as CEO, President and director of Rackwise.  (ECF No. 7 ¶ 29).  Without authorization, Archbold used Rackwise's corporate information to submit this filing, indicating that it was made on behalf of Rackwise.  (Id.)

Rackwise also alleges that Archbold held unauthorized "Board of Director" meetings on April 5, May 2, and May 12, 2017 on behalf of Rackwise (the "Archbold Board").  (ECF No. 7 ¶ 30).  Archbold, with the Defendants' assistance, also attempted to amend Rackwise's bylaws to issue newly-created preferred stock with one thousand times the voting power of the existing common stock in an attempt to dilute the majority shareholders of Rackwise.  (Id.  ¶ 31).  To further this plan, on May 12, 2017 Defendant Ablovatskiy prepared a "Rackwise Inc. Confidential and Binding Summary Term Sheet For the Offer to Sell Shares of Series A Preferred Stock" (the "Preferred

Stock Term Sheet"). (Id. ¶ 32). The Preferred Stock Term Sheet represented to the public that Archbold was authorized to act on behalf of Rackwise and that there were "no conflicts" with any company right. (Id. ¶¶ 33–34). Defendants and Archbold allegedly used the Preferred Stock Term Sheet to sell more than $94,000 in unauthorized stock, from which Archbold personally collected and maintained the proceeds. (Id. ¶¶ 37–38).

### 3. The California Action

On April 14, 2017 Rackwise commenced suit against Archbold in the Eastern District of California due to his "ongoing destructive conduct towards Rackwise" (the "California Action"). (ECF No. 7 ¶ 39). In the California Action, Rackwise asserted claims for conversion, fraud, breach of the duty of good faith and fair dealing, tortious interference with prospective economic advantage, and sought declaratory and injunctive relief arising from Archbold's actions before and after his termination from his Rackwise positions. (Id.) Randall J. Paulson, Esq. represented Archbold individually in the California Action. (ECF No. 55 at 22).

Although Defendants were not parties to the California Action, during the course of that litigation, Defendants repeatedly asserted that they represented Rackwise as corporate counsel and expressly stated that they represented Rackwise, the entity, rather than any board member individually.[1]

---

[1] April 25, 2017 correspondence from Defendant Shechter to Rackwise's counsel in the California Action stated "this firm represents Rackwise, Inc. . . . the actions by Mr. Imeson, [RFII] and/or Triple R-F LLC taken to date with respect to Rackwise have been invalid and improper . . . on behalf of our client and the valid Board of Directors, we hereby demand . . ." (ECF No. 7 ¶ 40). The next day, April 26, 2017, Shechter wrote to Rackwise's counsel in the California Action, "[a]s you are aware our firm represents Rackwise, Inc. . . . and our engagement was ratified and approved by the valid and currently standing Board of Directors (the "Board")and management of Rackwise . . . . all communications with the Board, advisors and management of Rackwise should be addressed to our firm as counsel for Rackwise." (Id. ¶ 41).

In addition, on June 12, 2017, while the motion for a permanent injunction was pending in the California Action, Defendants filed, on behalf of Rackwise, an action with the Financial Industry Regulatory Authority ("FINRA") against

On May 15, 2017, Rackwise moved for a preliminary prohibitory and mandatory injunction against Archbold in the California Action.  (ECF No. 7 ¶ 42).  On June 13, 2017, the Honorable William B. Shubb issued a preliminary injunction in the California Action, holding that:

> Archbold, his agents, and any party acting in concert with him or his agents are enjoined from:
>
> (1)    Accessing or logging into, or attempting to access or log into, Rackwise, Inc.'s account in the U.S. SEC's online EDGAR filing system;
>
> (2)    Representing himself to anyone as being an officer, director, or employee of, or otherwise affiliated with Rackwise, Inc.; and
>
> (3)    Acting, attempting to act, or purporting to act on behalf of Rackwise, Inc.

(the "Preliminary Injunction") (ECF No. 7-8 at 12–13).

On September 5, 2018, Judge Shubb granted both declaratory and injunctive relief in favor of Rackwise and against Archbold, and held that:

> 1.    On March 22, 2017, [RFII] validly exercised its warrants and purchased 1,448,440 shares of Rackwise common stock.
>
> 2.    On March 22, 2017, Triple R-F, LLC validly exercised its warrants and purchased 9,638,740 shares of Rackwise common stock.
>
> 3.    On March 23, 2017, Rackwise shareholders Rackwise Funding, LLC, [RFII], [BDFG], Blank Diamond Holdings, LLC, and Triple R-F, LLC, acting by written consent in accordance with § 3.3 of the Rackwise Bylaws, ratified and approved the removal of Guy Archbold and Sherman Henderson as directors of Rackwise effective February 3, 2017, and ratified and approved the appointment of Patrick Imeson and Bart Richert as Directors of Rackwise effective February 3, 2017.
>
> 4.    On March 23, 2017, Rackwise shareholders Rackwise Funding, LLC, [RFII], [BDFG], Blank Diamond Holdings, LLC, and Triple R-F, LLC, acting by written

---

Rackwise Funding, RFII, BDFG, Triple R-F, Imeson, Richert and Dwight Richert, seeking declaratory relief in the form of an order stating that the Rackwise actions taken on and after February 2, 2017 invalid and a preliminary and permanent injunction enjoining Imeson, Richert and Dwight Richert from representing that they acted on behalf of Rackwise.  (ECF No. 7 ¶ 43).  On June 14, 2017, FINRA declined the claim.  (Id. ¶ 44).

consent in accordance with § 3.3 of the Rackwise Bylaws, ratified and approved the termination of Guy Archbold as an officer and employee of Rackwise effective February 3, 2017, and ratified and approved the appointment of Patrick Imeson as chief restructuring officer for Rackwise effective February 3, 2017.

5.   No later than March 23, 2017, Defendant Archbold ceased to have any legal authority to hold himself out as an officer, director, or employee of Rackwise, Inc., or to act on behalf of Rackwise, Inc.

6.   The Rackwise Board, in acting to terminate defendant Archbold as an officer, director and employee of Rackwise effective February 3, 2017, and as ratified by the Rackwise shareholders, had just cause.

IT IS FURTHER ORDERED that Plaintiff's request for injunctive relief be, and the same hereby is, also GRANTED in part, and defendant Guy Archbold, his agents, and any party acting in concert with him or his agents are enjoined from:

1.   Accessing or logging into, or attempting to access or log into, Rackwise Inc.'s account in the U.S. SEC's online EDGAR filing system;

2.   Representing himself to anyone as being an officer, director, or employee of, or otherwise affiliated with Rackwise, Inc.; and

3.   Acting, attempting to act, or purporting to act on behalf of Rackwise, Inc.

(the "Permanent Injunction") (ECF No. 7-15 at 13–15).

Rackwise alleges that despite the Preliminary Injunction, Defendants "continued to represent publicly that Archbold was an officer and/or director of, or was otherwise affiliated with Rackwise; and repeatedly assisted Archbold in purporting to act on behalf of Rackwise." (ECF No. 7 ¶ 46).[2]

---

[2]On June 14, 2017, the day after the California Court issued the Preliminary Injunction, Defendants prepared and submitted for execution by the Archbold Board two documents titled "Unanimous Written Consent of the Board of Directors of Rackwise, Inc., dated as of June 14, 2017," both of which stated in relevant part:

RESOLVED, that Guy Archbold, the CEO, President, Interim CFO, Secretary, Acting Treasurer and Chairman of the Board of the Corporation (the "Authorized Person") is hereby authorized and empowered, on the Corporation's behalf to execute any agreements and instruments and any amendments or modification thereof and any such formal schedules, legal documents, pleads and other documents, and any and all

At the request of Rackwise and Defendants[3] (see ECF No. 55 at 32; ECF No. 57 at 12) the Court takes judicial notice of Judge Shubb's orders granting the Preliminary Injunction and the Permanent Injunction in the California Action, which Rackwise has incorporated by reference into the complaint (ECF No. 55).  See World Wrestling Entm't Inc. v. Jakks Pac. Inc., 425 F. Supp. 2d 484, 508 n.16 (S.D.N.Y. 2006) ("Federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to the matters at issue.").

---

further agreements, papers, documents and certificates as may from time to time be required with respect to any matters or transactions arising" in connection with the legal actions in Florida and California, respectively.

(ECF No. 7 ¶¶ 47–48).  On June 20, 2017, Shechter wrote to Rackwise's counsel in the California Action and stated in relevant part:

We are in receipt of your letter dated June 14, 2017. . . which you directly address to Messrs. Sherman Henderson, Jay Shiffman, Craig Whited, John Kyees and John Todd (collectively with Mr. Guy Archbold the "Rackwise Board") . . . as we have advised you on more than one occasion, this firm represents Rackwise, Inc. (The "Company") and the persons who believe to rightly direct and manage the affairs of the Company, to wit, the Rackwise Board. . . . Intentionally or otherwise, you continue to wrongly assert that this firm represents Guy Archbold in his personal capacity; once and for all, we do not, nor have we ever, represented Mr. Guy Archbold in his personal capacity. (ECF No. 7-11 at 2).

On June 20, 2017, Ablovatskiy emailed the SEC and stated, "[o]ur firm represents Rackwise, Inc. and its incumbent board of directors [the Archbold Board][.]"  (ECF No. 7 ¶ 51).  On June 23, 2017, Defendants wrote to the SEC and stated that, "[o]ur firm represents Rackwise and its incumbent board of directors (the "[Archbold] Board"), which includes Mr. Archbold."  (Id. ¶ 50; ECF No. 7-12).  Defendants asked the SEC not to release Rackwise's EDGAR filing credentials to Imeson, or in the alternative, to grant Defendants equal access to the codes, on the bases that "[t]here [wa]s no legal ruling or order in place prohibiting the members of the [Archbold] Board from acting on behalf of Rackwise," and that the Preliminary Injunction barred "only Archbold personally and not any of the other [Archbold] Board members from acting on behalf of Rackwise[.]"  (ECF No. 7 ¶ 50; ECF No. 7-12).

[3] Defendants request that the Court take notice of the Permanent Injunction "for the limited purpose of noting that certain assertions were made by Plaintiff in those proceedings," as Defendants "do not concede the findings made by the California Court (and are not bound by those findings under collateral estoppel or any other doctrine since Defendants were not parties to that litigation)[.]"  (ECF No. 57 at 14).  However, Defendants have put forth no authority that supports taking notice of an order only to the extent that it helps one party, and the Court declines to do so here.

B. **Procedural History**

On December 4, 2019, Rackwise filed this legal malpractice action based on Defendants' representation of Rackwise.  (ECF No. 7).  Rackwise asserts that "[b]y virtue of the attorney-client relationship that Defendants repeatedly claimed existed between them and Rackwise, Defendants at all times herein owed Rackwise a fiduciary duty" and that they were required to place "Rackwise's best interest above Archbold's interests and their own interests."  (Id. ¶ 55).  Rackwise alleges that Defendants violated their fiduciary duties to the company and that Defendants' actions were a "direct, proximate and substantial cause" of significant damages to Rackwise.  (Id. ¶ 58).

On March 20, 2020, Defendants answered the Complaint, and the parties began discovery.  (ECF Nos. 28, 32).  On October 2, 2020 the parties jointly wrote to the Honorable Analisa Torres describing the discovery dispute at issue in the Motion.  (ECF No. 47).  Judge Torres then referred the matter to the undersigned for general pretrial management, and the Court scheduled a discovery conference.  (ECF Nos. 48–49).  After the conference, the Court set a briefing schedule for the Motion.  (ECF No. 54).

The Motion seeks a Court order compelling the production of documents Defendants have withheld on grounds of attorney-client privilege, common interest privilege, and the work product doctrine.  (ECF No. 55).  Rackwise explains that, in response to its Request Nos. 2–7, 9–10, 13, 16, 18–20, 22–31, and 37, Defendants stated, "documents and/or portions of documents responsive to this Request have been withheld on the bases of the attorney-client privilege, the common interest privilege and the attorney work product doctrine[.]"  (Id. at 10).  Defendants' privilege log (the "Privilege Log") includes more than 1600 entries for communications between

Defendants and Archbold and other former Rackwise employees and board members (the "Communications"). (Id. at 11).

Rackwise argues that it holds any privilege in the Communications because privilege in communications between a corporation and its counsel is held by the corporation, not any individual director or employee. (ECF No. 55 at 11–12). Rackwise asserts that if any privilege exists in the Communications, Rackwise's current management has waived it and repeats its affirmative waiver by way of the Motion. (Id. at 12).

Defendants dispute Rackwise's characterization of the facts and state that during the "dispute over who had authority to control" Rackwise, Archbold retained Defendants as corporate counsel. (ECF No. 57 at 6). Defendants assert that that they "understood" Archbold "to be Rackwise's long-time CEO and Chairman of the Board of Directors" and that "Archbold and certain other individuals were understood to comprise the incumbent [Archbold] Board" while at the same time, "a separate group of individuals, including Patrick Imeson and Bart Richert, comprised a competing group who claimed to have taken control of Rackwise [the New Rackwise Board]." (Id.) Defendants allege that by virtue of these competing claims of control, the Archbold Board (for whom Defendants were corporate counsel) and the New Rackwise Board (which was later have found to have validly control) were in an "adversarial relationship." (Id.)

Defendants posit that because Rackwise and Imeson "never believed that they were represented by Defendants" it is "incredibl[e]" that they now seek to obtain privileged communications between Defendants and Archbold to which they were adverse, and Rackwise's "astounding claim that it owns the privilege of its adversary" is unfounded. (ECF No. 57 at 6–7). Defendants argue that because Rackwise maintained in the California Action that Archbold and

Defendants did not have authority to act on behalf of the company, it is "judicially estopped from now inconsistently claiming that Archbold and the [Archbold] Board had full authority to retain Defendants as corporate counsel for Rackwise, the entity[.]" (Id. at 8).

### III.    DISCUSSION

#### A.  Choice of Law

The parties do not dispute, and the Court agrees, that New York law applies to the analysis of the attorney-client and common interest privileges and that federal law applies to the Court's analysis of the work product doctrine.  (ECF Nos. 55 at 12–13 (citing cases); 57 at 16–17 (same)).

#### B.  Rackwise Holds the Privilege in the Communications and Has Waived It.

##### 1.  Rackwise was Defendants' client for privilege purposes.

"It is by now well established . . . that the attorney-client privilege attaches to corporations as well as to individuals."  CFTC v. Weintraub, 471 U.S. 343, 348 (1985).  When the client is a corporation, "the privilege of the corporation belongs to the corporation, not to corporate employees or directors."  Fitzpatrick v. Am. Int'l Grp., Inc., 272 F.R.D. 100, 107 (S.D.N.Y. 2010) ("the corporation is the client and the directors and officers are only its representatives").  As the Court stated in Fitzpatrick:

> Although privileged corporate communications with counsel, as well as the assertion or waiver of the privilege, must of course take place through the participation of an individual speaking for the client — be it an officer or a director or the entire Board of Directors or (in the case of a communication) even a low-level employee, e.g., Weintraub, 471 U.S. at 348, 105 S. Ct. 1986; Upjohn [v. United States], 449 U.S. [383,] 391, 101 S. Ct. 677 [(1981)]; In re Grand Jury Proceedings, 219 F.3d [175,] 183–84 [(2d Cir. 2000)]— that corporate representative is properly viewed as acting in his corporate fiduciary capacity in undertaking that communication or deciding whether to assert or waive the privilege.  The mere fact that he is doing so does not create an attorney-client relationship between that person in his individual capacity and the attorney.  E.g., [U.S. v. Int'l Broth.] Teamsters, 119 F.3d [210,] 215 [(2d Cir. 1997)].   See also In re Grand Jury

<u>Proceedings</u>, 219 F.3d at 183–85.  The privileged relationship in that setting is between the attorney and the corporation.

<u>Id</u> at 107.  As the Supreme Court stated in <u>Weintraub</u>, "[d]isplaced managers may not assert privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." <u>Id.</u> at 349 (citing cases).  Thus, the Court observed. "[i]t follows that [a former officer and director] retains no control over the corporation's privilege." <u>Id.</u> at 349 n.5.; <u>In re Grand Jury Proceedings</u>, 219 F.3d at 184 ("In <u>Teamsters</u>, we surveyed the law on this issue and concluded that employees or officers of the corporation 'generally may not prevent a corporation from waiving the attorney-client privilege arising from . . . communications [between the corporation's counsel and officers of the corporation].'" (citing 119 F.3d at 215 (and cases cited therein))).

In <u>Weintraub</u>, the Court noted that "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well.  New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors."  471 U.S. at 349.  And, "in the case of a solvent corporation . . . individual officers and directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel." <u>Id.</u> at 357.

Defendants argue that "it is indisputable that Defendants never represented the [New Rackwise] Board, which now controls Rackwise," and "[c]onsequently, Plaintiff does not own any of the privileges asserted by Defendants herein and cannot purport to waive them."  (ECF No. 57 at 7).  Defendants assert that they "were retained by Archbold to serve as corporate counsel for

the [Archbold] Board of Rackwise[.]"  (ECF No. 57 at 11).  The engagement letter dated April 5, 2017 (the "Engagement Letter"), however, by its terms is between Defendant Foley Shechter LLP and Rackwise, and is signed by Archbold on behalf of Rackwise, in his capacity as CEO.  (ECF No. 57-2 at 2, 5).  On the face of the Engagement Letter, Defendants were not counsel for the Archbold Board, they were counsel for Rackwise.

Defendants attempt to distinguish their representation of the Archbold Board from their representation of Rackwise, but the privileges at issue do not belong to a corporate board, they belong to the corporation itself, even after it retains an entirely new board.  See Weintraub, 471 U.S. at 349 ("when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well.  New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors.").  At the time the Communications were made, Defendants represented Rackwise, the entity.  Not only does the Engagement Letter demonstrate that the Defendants' fiduciary duties ran to Rackwise and not the Archbold Board (ECF No. 57-2), Defendants repeatedly held out that they represented the company, and not any officer or director in their personal capacity.  (See supra Section II.A.2–3).  "Unless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees."  Nunan v. Midwest, Inc., 11 Misc. 3d 1052(A), at *6 (2006) (citing Talvy v. Am. Red Cross in Greater N.Y., 87 N.Y.2d 826 (1995)).  Judge Shubb's finding in the Permanent Injunction that Archbold had been properly removed (see ECF No. 7-15 at 13–15)

does not relieve Defendants of their fiduciary duties that arose to the corporation by virtue of their Engagement Letter to represent Rackwise.

Accordingly, Rackwise, as Defendants' client, holds the privileges in the Communications and has explicitly waived those privileges for purpose of pursuing its claims against Defendants in the context of its malpractice action and this Motion.  (ECF No. 55 at 12) ("[t]o the extent any of the privileges asserted even exist, they have passed to, and have been waived by Rackwise's current management.").  Even if Rackwise had not explicitly waived any privilege it has regarding its communications with Defendants, these communications are necessarily "at issue" in Rackwise's action and thus any privilege in them would be waived by virtue of the suit.  Loguidice v. McTiernan, No. 14 Civ. 1323 (TJM) (CFH), 2016 WL 4487779, at *20 (N.D.N.Y. Aug. 25, 2016) (explaining that privileged communications are "at issue" for example, "when a plaintiff sues a former attorney for professional malpractice") (quoting Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co., 232 F.R.D. 191, 198-99 (S.D.N.Y. 2005)).

## 2. There was no adversarial relationship between Rackwise and Defendants at the time of the Communications.

Defendants argue that "while, generally, a corporate client owns the privilege with regard to its communications with corporate counsel, New York courts have long held that such is not the case where the communications were made by an adversary in a corporate dispute or if the communication took place in the context of an 'adversarial relationship.'"  (ECF No. 57 at 20–21). Rackwise responds that the interests of the former and current management of Rackwise are aligned in pursuing claims against the Defendants for malpractice, and that "there is no adversarial relationship that precludes discovery of the communications at issue."  (ECF No. 59 at 9–10).

The Court finds that the "adversarial relationships" at issue in the cases cited by Defendants are distinguishable from the facts in this case, and that there was not a relationship between Defendants and the Archbold Board that created an independent attorney-client relationship. Tekni-Plex and Orbit One, the cases on which Defendants primarily rely for the existence of an "adverse relationship," both involved closely-held corporations and the sale of assets or a corporate merger, such that the central issue was whether the transfer of assets also transferred the attorney-client privilege with respect to the communications specific to the transaction. See Orbit One Comms. v. Numerex Corp., 255 F.R.D. 98, 105 (S.D.N.Y. 2008) (explaining the distinction "between confidential communications regarding a company's ongoing operations and those related to its acquisition."); Tekni-Plex, Inc. v. Meyner & Landis, 89 N.Y.2d 123 (1996) (holding that "while generally parties who negotiate a corporate acquisition should expect that the privileges of the acquired corporation would be incidents of the sale . . . the agreement between the parties here contemplated that, in any dispute arising from the merger transaction, the rights of the acquired corporation . . . relating to the transaction would remain independent from and adverse to the rights" of the new corporation (internal citations omitted)). The court in Tekni-Plex also specifically limited its findings to the "facts of [the] particular transaction and the structure of the underlying agreement[.]" 89 N.Y.2d at 139.

Here, there is no underlying sale, transaction, or suit to which the parties could be considered "adverse." When the Communications were made, Defendants purported to represent Rackwise, and the interests of New Rackwise Board were not adverse to the Archbold Board in the sense that they were on opposing sides of a merger, sale of assets, or litigation.

Accordingly, Defendants cannot assert a separate attorney-client privilege with the Archbold Board on the basis that it was in an "adverse relationship" with the New Rackwise Board.

### 3. <u>Common interest doctrine does not apply.</u>

The common interest doctrine "is not an independent source of privilege or confidentiality so that if a communication is not protected by the attorney client privilege or the attorney work-product doctrine, the common interest doctrine does not apply." <u>Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.</u>, 284 F.R.D. 132, 139 (S.D.N.Y 2012) (internal citations omitted); <u>see also</u> <u>HSH Nordbank AG N.Y. Branch v. Swerdlow</u>, 259 F.R.D. 64, 71 (S.D.N.Y 2009) (holding that "where the underlying communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply" (internal citations omitted)).

Because the Court finds that Rackwise, not the Archbold Board, was Defendants' client, that Rackwise holds the attorney-client privilege, and that Rackwise has waived the privilege, the common interest doctrine does not provide a basis on which Defendants may withhold the Communications.

### 4. <u>Work product doctrine</u>

Rackwise argues that the work product doctrine does not apply for several reasons.  First, they note that Defendants were corporate counsel for Rackwise, not litigation counsel, and did not represent them in any litigation.  (ECF No. 59 at 30–31).  Second, Rackwise argues that it holds the work product protection to the extent it exists, and waives it.  (<u>Id.</u>) Defendants contend that the protection cannot be waived unilaterally and has been properly asserted on the Privilege Log.  (ECF No. 57 at 25).

Generally, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]"  Sokol v. Wyeth, No. 07 Civ. 8442 (SHS) (KNF), 2008 WL 3166662, at *10 (S.D.N.Y. Aug. 4, 2008).  Subject to Federal Rule of Civil Procedure 26(b), however, work product materials are discoverable if (i) they are otherwise discoverable under Rule 26(b)(1), and (ii) the party seeking them shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.  Fed. R. Civ. P. 26(b)(3)(A).

Courts in this District have recognized that, "on its face," the work product protection "does not give an attorney the right to withhold work product from his own client, and in fact it has been specifically read as not requiring such a result."  Martin v. Valley Nat. Bank of Arizona, 140 F.R.D. 291, 320 (S.D.N.Y. 1991) (collecting cases).  The court in Martin continued, "[t]his result is hardly surprising in view of the evident inapplicability of the rationale for the work-product rule to an attorney's efforts to withhold the fruits of his professional labors from the client, who presumably paid for and was the intended beneficiary of those labors."  (Id.)  Thus, in the context of attorney-client disputes, "the client's interest will prevail."  Polin v. Wisehart & Koch, No. 00 Civ. 9624(AGS) (MHD), 2002 WL 1033807, at *2 (S.D.N.Y. May 22, 2002) ("Nonetheless, it is clear that when the interests of the client and the attorney clash — as here — it is the client's interest that will prevail."); see Martin, 140 F.R.D. at 320–21 (explaining that product protection "does not give an attorney the right to withhold work product from his own client").  Further, under Rule 26(b)(3), work product should be produced on a sufficient showing of need, which is sufficient when the case "involves a malpractice claim against defendants . . . and the work product at issue . . . reflects, in the most direct way, the performance of the attorneys[.]"  Polin,

2002 WL 1033807, at *3; <u>see</u> <u>also</u> <u>Gruss v. Zwirn</u>, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) (ordering disclosure of attorney notes and quoting <u>Polin</u>'s holding that "the [work-product] rule may not be invoked by an attorney to withhold from a client or former client work-product created in representing that client.").   Accordingly, contrary to Defendants' contention, in the context of malpractice and breach of fiduciary duty claims, the Court finds that Rackwise is entitled to the Communications withheld on the basis of the work product doctrine.   <u>See</u> <u>Polin</u>, 2002 WL 1033807, at *2 ("There is also no quarrel with the basic proposition that opinion work product is entitled to particularly stringent protection.   The federal caselaw that recognizes the status of such materials, however, is addressing immunity in the context of litigation in which the interests of the attorney and the client do not diverge.   Thus, these cases do not hold that the status of so-called "core" work product . . . immunizes documents from access by the attorney's own client or former client." (internal citations omitted)).

### 5.  <u>Judicial estoppel does not apply.</u>

Defendants argue that Rackwise should be judicially estopped from asserting a position that is "diametrically opposite" to the position it asserted in the California Action.  (ECF No. 57 at 15).  Defendants posit that because counsel for Rackwise stated that Defendants did not have the authority to act on behalf of the company, and that because the California Court ultimately agreed, Defendants could not have been Rackwise's counsel.  (<u>Id.</u>)

The doctrine of judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001) (internal citation omitted).  "The doctrine serves two dual purposes:  to preserve the sanctity of the oath and to protect judicial integrity by

avoiding the risk of inconsistent results in two proceedings.  China Shipping Container Lines Co.
v. Big Port Serv. DMCC, No. 15 Civ. 2006 (AT), 2019 WL 9362547, at *8 (S.D.N.Y. Jan. 15, 2019)
(internal citations omitted)).  "In evaluating whether to apply the doctrine of judicial estoppel,
courts generally look for the existence of three factors:  (1) that a party's new position is clearly
inconsistent with its earlier position, (2) that the party seeking to assert this new position
previously persuaded a court to accept its earlier position, and (3) that the party would derive an
unfair advantage or impose an unfair detriment on the opposing party if not estopped."  Id.
(internal citations omitted).

        The Court finds that judicial estoppel does not apply because the position Rackwise took
in the California Action and the position it takes in the Complaint and Motion are entirely
consistent.  In the California Action, Rackwise alleged that Archbold continued to represent to
the public that he was acting on behalf of the company, despite his termination from the Board
and his corporate positions.  (ECF No. 59 at 20–21).  Rackwise argued that Archbold was not
acting with actual authority and sought a preliminary injunction to prevent him from binding the
corporation on the basis of his apparent authority.  (Id.)  In the Complaint, Rackwise argued that
on the basis of his apparent authority, Archbold took actions on behalf of the company, such as
retaining Defendants.  (ECF No. 7 ¶¶ 28–41).  The fact that Judge Shubb ultimately found that
Archbold did not have authority to take the actions he did, does not render Rackwise's position
inconsistent.  Simon v. Safelite Glass Corp., 128 F.3d 68, 72–73 (2d Cir. 1997) (finding that "there
must be a true inconsistency between the statements in the two proceedings.  If the statements
can be reconciled there is no occasion to apply an estoppel.").

### C. **The Cross Motion**

Defendants' Cross-Motion argues that Rackwise has waived the privilege in its communications with its own attorneys by voluntarily placing those communications "at issue" in this action.  (ECF No. 57at 26).  Defendants argue that, "[g]iven that the Defendants have asserted affirmative defenses in their Answer based upon, among other things, Imeson and the [New Rackwise] Board's own wrongful conduct . . . Defendants are entitled to Plaintiff's communications with their lawyers to unveil their motives for their actions in relation to attempting a takeover of Rackwise."  (Id. at 27).  Defendants argue that by pursuing its claims in this action Rackwise has placed its "the reasons for its own actions in attempting to takeover Rackwise at issue" and thus has "involuntarily waived any privilege associated with communications it has had with its attorneys regarding the dispute over control of the company." (Id.)

Despite Rackwise's contention that there is no basis to compel these communications, "in the interest of complete transparency," Rackwise alleges that it produced the communications requested in the Cross-Motion such that it is now moot.  (ECF No. 59 at 9).  Defendants contend that while their review of Rackwise's production is ongoing, it is deficient, primarily because it does not include emails between Rackwise and its corporate counsel that pre-date the filing of the California Action, which allegedly go to the New Rackwise Board's "orchestrated plans and motivations to attempt a takeover of Rackwise" which are "at the heart of the underlying corporate dispute over who had authority to control Rackwise."  (ECF No. 64 at 2–3).

First, the Court notes that the Cross-Motion, which amounts to a discovery dispute, is not ripe for the Court's review.  Defendants do not state whether the communications it seeks to

compel were ever requested, informally or through written demands, and does not follow this Court's requirements with respect to discovery disputes that requires the parties to meet and confer (and explain the history of those discussions) before bringing a dispute to the Court. See § II.C.1, Individual Practices of Sarah L. Cave, U.S. Mag. J., available at www.nysd.uscourts.gov/hon-Sarah-l-Cave.

Substantively, the underlying issue in this action is not Rackwise's "reason for wanting to control" the company – it is a legal malpractice action claiming that Defendants breached duties they owed to Rackwise. (ECF No. 7). Defendants state that the communications they seek in the Cross-Motion go to "certain affirmative defenses in Defendants' Answer to the Complaint, and which cannot be easily answered by other means." (ECF No. 64 at 5). But Defendants do not specify the purported wrongdoing by Rackwise, to which affirmative defenses this conduct allegedly pertains, nor why they could not obtain the information by other means.

"At issue" waiver occurs "where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information." Windsor Sec., LLC v. Arent Fox LLP, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017) (citing Deutsche Bank Trust Co. of Ams. V. Tri-Links Inv. Trust, 43 A.D.3d at 63 (N.Y. App. Div. 2007)). As the Court stated in Windsor, disclosure of the attorney-client communications of counsel is not necessarily required to defend against a claim of malpractice, and "New York courts have routinely refused to find an at-issue waiver of privileged communications with successor counsel in malpractice cases." Windsor Sec., LLC, 273 F. Supp. 3d at 518; Deutsche Bank, 43 A.D.3d at 63 ("that a privileged communication contains

information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit; if that were the case, a privilege would have little effect.")

Unless Rackwise intends to affirmatively rely on its communications with corporate counsel in prosecuting this action, Deutsche Bank, 43 A.D.3d at 63, Rackwise has not put its privileged communications "at issue" by bringing this action against Defendants.  Jakobleff v. Cerrato, Sweeney & Cohn, 97 A.D.2d 834 (2d Dep't 1983) ("By bringing an action against her former attorneys for legal malpractice, plaintiff has placed her damages in issue, and defendants may both raise the defense of plaintiff's failure to mitigate damages and assert a third-party claim for contribution against the present attorney for those damages for which the former attorneys may be liable to plaintiff.  However, it simply cannot be said that plaintiff has placed her privileged communications with her present attorney in issue, or that discovery of such communications is required to enable defendants to assert a defense or to prosecute their third-party claim.").  Accordingly, on the present record, the Court will not order Rackwise to produce anything further than it already has.

## IV.   CONCLUSION

For the reasons set forth above, the Motion is GRANTED and the Cross-Motion is DENIED. By **January 15, 2021**, Defendants must (1) amend their responses to Rackwise's Request Nos. 2–7, 9–10, 13, 16, 18–20, 22–31, and 37 to which Defendants responded that "documents and/or portions of documents responsive to this Request have been withheld on the bases of the attorney-client privilege, the common interest privilege and the attorney work product doctrine[];" and (2) produce the Communications listed in the Privilege Log between the

Defendants and Archbold and other former Rackwise employees and board members that Defendants withheld on the bases of the attorney-client and common interest privileges or the work product doctrine.

The parties are directed to meet and confer to resolve any disputes that arise as a result of the application of this Order to the Privilege Log.  Any remaining disputed documents may then be submitted to the Court for in camera review.

The Clerk of Court is respectfully directed to close the Motion at ECF No. 55.

Dated:          New York, New York
                December 14, 2020

_____

SARAH L. CAVE
United States Magistrate Judge